IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Christina S., | : | |
| Plaintiff, | : | |
| | | Case No. 3:22-cv-00054-TPK |
| vs. | : | |
| | : | Magistrate Judge Kemp |
| Commissioner of Social Security, | : | |
| Defendant. | : | |

## OPINION AND ORDER

Plaintiff filed this action seeking review of a final decision of the Commissioner of Social Security. That decision, issued by an Administrative Law Judge on December 7, 2021, following a remand ordered by this Court, partially denied her application for social security disability benefits. Plaintiff filed a statement of errors on May 19, 2022 (Doc. 8) to which the Commissioner responded on August 15, 2022 (Doc. 11). For the following reasons, the Court will **SUSTAIN** Plaintiff's statement of errors and **REMAND** this case to the Commissioner pursuant to 42 U.S.C. §405(g), sentence four.

## I. INTRODUCTION

Plaintiff filed her application on February 15, 2016, alleging that she became disabled on August 28, 2014. The procedural history of the case up until the Court's remand order is set forth in the Court's prior decision. *See Smith v. Comm'r of Social Security*, 2021 WL 1165763 (S.D. Ohio March 26, 2021). There, Plaintiff had contended that the ALJ erred by issuing only a partially favorable decision which awarded her benefits beginning on August 17, 2018.

Following remand, a second administrative hearing was held on July 28, 2021. The Administrative Law Judge, in a decision dated December 9, 2021, again determined that Plaintiff was entitled to benefits beginning on August 17, 2018 but not before. He first found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2019, and that she had not engaged in substantial gainful activity since her alleged onset date. The ALJ next concluded that Plaintiff suffered from severe impairments including fibromyalgia, neuropathy, venous insufficiency, depression, and anxiety. However, the ALJ also found that none of these impairments, taken singly or in combination, met the criteria for disability found in the Listing of Impairments.

Moving to the next step of the sequential evaluation process, the ALJ found that, during

the relevant time period, Plaintiff could perform a reduced range of light work. According to the ALJ, Plaintiff could stand or walk for about four hours in a workday, could sit for six hours, could not climb ladders, ropes, or scaffolds, could occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs, could perform simple, routine tasks (although not at a production rate pace and not with strict production quotas), could interact occasionally with others, and could tolerate occasional changes to a routine work setting.

Moving on with the process, the ALJ determined that with these limitations, Plaintiff could not, based on testimony given by the vocational expert, perform her past relevant work as a machine operator. However, the ALJ found that prior to August 17, 2018, when Plaintiff's age category changed, there were a substantial number of jobs she could do, including routing clerk, merchandise marker, and mail clerk. As a result, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act prior to August 17, 2018.

In her statement of errors, Plaintiff raises these issues. She contends that the ALJ erred in rejecting the opinion of Dr. Wilson, her primary care provider, and in his evaluation of the opinion of Dr. Bolz, a state agency reviewer. As a result, she asserts that the ALJ's decision lacked proper evidentiary support.

## II. STANDARD OF REVIEW

As this Court said in *Jeter v. Comm'r of Soc. Sec. Admin.*, 2020 WL 5587115, at *1–2 (S.D. Ohio Sept. 18, 2020)**,**

> Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec*., 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.' " *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.,* 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance...." *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.
>
> The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*,

582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.' " *Rabbers,* 582 F.3d at 651 [quotations and citations omitted].

### III. FACTUAL BACKGROUND

In its prior decision, this Court remanded the case for further evaluation of Dr. Wilson's opinion. The Court's pertinent findings were, first, that the ALJ's decision to afford little weight to Dr. Wilson's opinion because it was not consistent with the record was not supported by substantial evidence, primarily because "the objective medical evidence fails to justify the ALJ's conclusion that Dr. Wilson based her opinions on an 'uncritical acceptance of [Plaintiff's] subjective allegations.' " *Smith v. Comm'r of Soc. Sec. Admin.*, 2021 WL 1165763, at *4 (S.D. Ohio Mar. 26, 2021). Additionally, the Court determined that the ALJ erred by requiring that there be objective medical findings supporting Plaintiff's claim that she suffered from fibromyalgia. *Id.* Finally, the Court found that, when determining how much weight to assign to Dr. Wilson's opinion, the ALJ did not properly apply the relevant factors set forth in 20 C.F.R. §404.1527. *Id*. at *5. The Court's summary of the evidence will focus on those portions of the record which are relevant to the ALJ's reconsideration of these issues.

#### A. Hearing Testimony

Plaintiff, who was 54 years old at the time of the first administrative hearing, testified, first, that she lived in a two-story house but was only able to climb the stairs once a day. She had difficulty driving due to panic attacks. She had last worked in 2014 performing a factory job.

When asked why she could not work, Plaintiff said that she could not function in the morning until her pain medication started to work. Afterward, she could only do tasks for fifteen minutes at a time until she had to take a break to stretch, move around, or prop her feet up. She could only stand for ten or fifteen minutes at a time and was limited in her sitting as well. She had constant pain in her legs and feet. Her pain made it difficult if not impossible to shop for groceries.

On a typical day, Plaintiff sat with her feet propped up and stood up to stretch every so often. She was able to shower and dress. She could watch television and use social media, and she could lift ten pounds occasionally. When reading or watching television, Plaintiff would often lose focus. Finally, she said that her depression prevented her from socializing.

At the second hearing, Plaintiff clarified that she stopped working due to pain and swelling in her feet which prevented her from standing for ten hours a day, which was a job requirement. Once she stopped working, she propped her feet up for three or four hours every

day.

A vocational expert, William Braunig, also testified at the second hearing. He was asked to assume that Plaintiff's past job was skilled and typically performed at the medium exertional level. He was then asked questions about someone with Plaintiff's vocational profile who could do a reduced range of light work with various postural and mental restrictions. In response, Mr. Braunig said that such a person could not do Plaintiff's past work, but could perform jobs such as routing clerk, merchandise, marker, and mail clerk. However, if the person had to take randomly-scheduled 15 minute breaks throughout the workday, had to elevate her legs to waist level, or could not wear shoes at work, those jobs and other light jobs would not be available.

### B. Relevant Medical Records

The most pertinent medical records are the treatment notes from Dr. Libby Wilson, whose opinion was, as set out in the Court's prior decision, not properly weighed. The Court will summarize those and other relevant treatment notes in some detail here.

Plaintiff saw Dr. Wilson for pain and swelling in her left foot in March, 2012 while she was still working. She told Dr. Wilson that exercise made the problem worse. On examination, she showed significantly decreased range of motion in her left ankle as well as swelling around the lateral malleolus. Medication was prescribed at that time, but it did not seem to help. An MRI was suggestive of a ligament strain. A note from the following year indicated that Plaintiff was having a lot of throbbing foot and leg pain as well as muscle weakness. She was also being treated for generalized anxiety disorder, and Dr. Wilson prescribed several medications for that condition. In August of 2013, an EMG was done, but it showed no evidence of neuropathy, radiculopathy, or myopathy. Nevertheless, Plaintiff continued to report "lots of bilateral leg pain," Tr. 307, and said that the medications she was being prescribed were not effective in reducing that pain. By the spring of 2014, she was taking both Tramadol and Vicodin for the pain, and was expressing frustration that no one at her workplace seemed to appreciate the level of pain she was experiencing. By May of that year, she had been diagnosed with fibromyalgia with dysesthesia of small fiber neuropathy as a result of an examination done by Dr. Thomas-John, a rheumatologist. At that examination, Plaintiff reported pain in feet, knees, ankles, and thighs aggravated by climbing stairs and walking. She demonstrated weakness and was positive for myalgias and arthralgias. By July she reported to Dr. Wilson that it hurt to wear shoes. The problem was worse the following month, and she could only be on her feet for an hour or two at a time. That was the month she quit working.

The treatment notes made after Plaintiff stopped working show that her condition had improved once she quit, but her feet still hurt when she went grocery shopping for more than an hour. Dr. Wilson changed her diagnosis from fibromyalgia to neuropathy and indicated that Plaintiff should be off work for at least a year. A September, 2015 note reported that Plaintiff's feet "hurt so bad" and that she was unable to fill her prescription for Lyrica due to the cost. However, the swelling in her feet had largely abated.

In January, 2017, Plaintiff was evaluated by Associated Foot and Ankle Specialists. She

told them that she had been experiencing foot pain for many years and had had to stand on an ice pack to continue working. The pain radiated from her foot to her left knee if she was on her feet for any length of time. Both feet were tender on examination but there was no swelling noted. She was advised to continue to pursue relief in various avenues including neurology and pain management. She told Dr. Wilson the same month that her feet were so much better since she stopped doing physical labor, but the next month she reported that there were times when she could not sleep due to pain.

In June of that year, Plaintiff saw Dr. Gulati, a rheumatologist, by way of referral from Dr. Wilson. Her major complaint at that time was swelling of her feet when on them for as little as 20 minutes. She had also told Dr. Wilson that month that she was still having severe pain in her feet. She told Dr. Gulati that she was taking Lyrica, Cymbalta, and Tramadol to help with the pain, and they were helping to some extent. Dr. Gulati ordered a number of tests to rule out conditions other than fibromyalgia and he continued her on her medications. She saw another specialist, Dr. Conkel, in January of 2018, also on referral from Dr. Wilson. Dr. Conkel noted that Plaintiff had a neuropathic component to her leg pain, and he ordered a duplex ultrasound to look for venous insufficiency, which turned out to be present in the right leg. She underwent an ablation to treat this condition in February, 2018, and later told Dr. Conkel that she had decreased pain and swelling in her right leg and less fatigue. There are no additional relevant treatment records prior to August 17, 2018, the date on which Plaintiff began receiving benefits.

### C. Opinion Evidence

Dr. Wilson completed a medical impairment questionnaire on September 29, 2017. In it, she described Plaintiff's symptoms as numbness, burning, and tingling in both feet, throbbing pain from knees to toes, and aching in the hips and the tailbone. The diagnoses included fibromyalgia, and Dr. Wilson reported that Plaintiff demonstrated 11 of 18 trigger points on examination. She did not think Plaintiff could work more than four hours a day and said her sitting and standing were severely limited. She also needed to elevate her feet above waist level on a frequent basis, would be off task for 20% or more of the time, and would miss work three times per month. (Tr. 564-65).

Dr. Bolz, a state agency reviewer, considered the medical evidence of record up to September 24, 2016. He concluded that Plaintiff could work at the medium exertional level with some postural limitations. (Tr. 100-01).

### IV. DISCUSSION

### A. Summary of the Arguments

Plaintiff begins her argument by noting that the Court's prior remand order was intended to address "significant errors in [the ALJ's] prior rejection of the opinion evidence provided by Dr. Wilson, Plaintiff's longtime treating primary care provider." Plaintiff's Statement of Errors, Doc. 8, at 11. She then details the ALJ's rationale for again rejecting this opinion and criticizes

it for failing to take the diagnosis and limitations caused by Plaintiff's fibromyalgia into account and by reciting, incorrectly, that there was no objective evidence to support the limitations imposed by Dr. Wilson. She also asserts that the ALJ's conclusion that the objective evidence is inconsistent with those limitations is impermissibly based on the ALJ's lay opinion, and that he misread or misinterpreted the treatment notes in order to justify his rejection of Dr. Wilson's opinion. Finally, she claims that the ALJ appears not to have applied the same level of scrutiny to Dr. Bolz's opinion as he did to Dr. Wilson's, even though the former came from a non-treating, non-examining source, and asserts that it was error to have given partial weight to that opinion. The Commissioner responds that the ALJ appropriately interpreted the medical evidence as well as the evidence concerning Plaintiff's activities of daily living, medications, and treatment, and reached a reasonable conclusion as to the reliability of the medical opinions, applying the proper regulatory factors in reaching that conclusion.

### B. Applicable Legal Standard

As this Court has said,

> Until March 27, 2017, "the Commissioner's regulations [that apply to this appeal] establish[ed] a hierarchy of acceptable medical source opinions[.]" *Snell v. Comm'r of Soc. Sec.,* No. 3:12-cv-119, 2013 WL 372032, at *9 (S.D. Ohio Jan. 30, 2013). In descending order, these medical source opinions are: (1) treaters; (2) examiners; and (3) record reviewers. *Id*. Under the regulations then in effect, the opinions of treaters are entitled to the greatest deference because they "are likely to be ... most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations[.]" 20 C.F.R. § 404.1527(c)(2).
>
> A treater's opinions must be given "controlling weight" if "well-supported by medically acceptable clinical and laboratory diagnostic techniques and ... not inconsistent with the other substantial evidence in [the] case record." *LaRiccia v. Comm'r of Soc. Sec.,* 549 F. App'x 377, 384 (6th Cir. 2013). Even if a treater's opinion is not entitled to controlling weight, "the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinions, consistency of the opinions with the record as a whole, and any specialization of the treating physician." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also* 20 C.F.R. § 404.1527(c).
>
> After treaters, "[n]ext in the hierarchy are examining physicians and psychologists, who often see and examine claimants only once." *Snell*, 2013 WL 372032, at *9.

Record reviewers are afforded the least deference and these "non-examining physicians' opinions are on the lowest rung of the hierarchy of medical source opinions." *Id*. "The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual [claimant] become weaker." *Id*. (citing SSR 96-6p, 1996 WL 374180, at *2 (July 2, 1996) ).

*Powers v. Comm'r of Soc. Sec.*, 356 F. Supp. 3d 695, 701–02 (S.D. Ohio 2018).

### C. The ALJ's Decision

The ALJ first summarized Plaintiff's written function reports and her testimony, all of which recounted symptoms inconsistent with working, and then concluded that "the record does not support fibromylagia, neuropathy, or venous insufficiency symptoms as intense, persistent, or limiting as alleged." (Tr. 860). He then reviewed the medical evidence and concluded that although Plaintiff "made frequent complaints about pain, her physical examinations were generally normal except for tenderness, and she reported being able to stay on her feet for up to two hours at a time." (Tr. 861). That evidence, he said, was "not consistent with symptoms as severe as alleged as of the alleged onset date," and that her "relatively normal physical examinations, along with her good responses to low does of medication, demonstrates that her symptoms are not as intense, persistent, or limiting as alleged." (Tr. 861-62). He bolstered that conclusion by noting that her course of treatment was conservative and that she had not sought emergency room treatment or been prescribed a cane. (Tr. 863). As a result, he believed that she was able to perform a reduced range of light work. *Id*.

The ALJ then evaluated the opinion evidence. He gave partial weight to Dr. Bolz's opinion, noting that it was only somewhat consistent with the record, which included both examination findings of tenderness and edema and Plaintiff's subjective description of her symptoms. (Tr. 866). He then engaged in an extensive review of Dr. Wilson's opinion, reciting, first, the correct regulatory standard from 20 C.F.R. §404.1527, and finding that the opinion was not entitled to either controlling or deferential weight "as it is not supported by the record." (Tr. 867-68). As additional justification for this conclusion, the ALJ noted that the opinion was "not well explained" and not supported by the largely normal objective findings recited in the treatment notes. He also relied on a perceived inconsistency between the restrictions set forth in Dr. Wilson's opinion and her advice to Plaintiff to exercise. (Tr. 868). Lastly, he concluded that those restrictions were also inconsistent with Plaintiff's reported activities of daily living, including going grocery shopping, being able to sit without limitation, being able to stand for an hour or two, and going on vacation. *Id*.

### D. Discussion

The Court finds this passage from *Madinger v. Comm'r of Soc. Sec.*, 2019 WL 5091958, at *5 (S.D. Ohio Oct. 11, 2019) to be particularly instructive:

In this case, [Plaintiff's] fibromyalgia "complicates" the treating physician rule. *Lucas v. Comm'r of Soc. Sec.,* No. 18-10087, 2019 WL 1117927, at *6 (E.D. Mich. Feb. 21, 2019), *report and recommendation adopted*, No. 18-10087, 2019 WL 1112280 (E.D. Mich. Mar. 11, 2019). As the Sixth Circuit has explained, in cases where the plaintiff has fibromyalgia, " 'physical examinations will usually yield normal results—a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions." *Id*. (quoting *Preston v. Sec'y of Health & Human Servs.,* 854 F.2d 815, 817–18 (6th Cir. 1988)). And, unlike other conditions, " '[t]here are no objective tests which can conclusively confirm the disease, rather it is a process of diagnosis by exclusion and testing of certain 'focal tender points' on the body for acute tenderness which is characteristic in [fibromyalgia] patients.' " *Id*. (quoting *Preston,* 854 F.2d at 818). This means, therefore, that fibromyalgia patients generally do not present "objectively alarming signs." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007).

Relevant here, the unique nature of fibromyalgia matters to an ALJ's application of the treating physician rule. "The Sixth Circuit and the Social Security Administration have recognized that it makes little sense to rely on a lack of objective medical evidence when addressing both the diagnosis and treatment of fibromyalgia." *Lucas*, 2019 WL 1117927, at * 6 (citing *Rogers*, 486 F.3d at 243–44 (noting that "opinions that focus upon objective evidence are not particularly relevant" when considering fibromyalgia)). In other words, in fibromyalgia cases, an ALJ does not satisfy the "good reasons" requirement, when he or she rejects a treating source opinion largely based on a lack of objective medical evidence and/or benign findings. *See, e.g., Lucas*, 2019 WL 1117927, at *6 (finding that "the ALJ's contention that the treating physician's assessments and opinion were unsupported by objective medical evidence was 'simply beside the point' " (quoting *Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 861–62 (6th Cir. 2011) (holding that "the ALJ's rejection of the treating physicians' opinions as unsupported by objective evidence in the record obviously stem[med] from his fundamental misunderstanding of the nature of fibromyalgia"))).

Here, as noted, the ALJ, despite the Court's prior remand order, continued to place heavy reliance on the absence of objective evidence demonstrating the extent of Plaintiff's physical limitations. He discounted both her subjective reports of symptoms and Dr. Wilson's opinion based on that factor. The other reasons he gave for giving little weight to Dr. Wilson's opinion - that it was inconsistent with her advice to Plaintiff to exercise (which is also common in fibromyalgia cases) and that it was inconsistent with Plaintiff's own description of her abilities - are simply insufficient to support his conclusions. While it is true that, at times, Plaintiff said she could shop for groceries for up to an hour, there is nothing in her testimony or self-report that would suggest she could stand for up to four hours in a workday, especially if she was not able to elevate her feet. The determination that she could do so - which determination does not

appear to distinguish between standing and walking for a total of four hours on an intermittent basis and doing so on a continuous basis - has no support in the record. It can only have been the product of the ALJ's own lay interpretation of the medical evidence, which did not account for the fact that Plaintiff's fibromyalgia symptoms affecting her feet, ankles, and legs were not susceptible to being measured by objective findings, or the fact that she sought treatment of those symptoms from multiple medical providers, including specialists, due to the fact that her symptoms persisted despite treatment. Further, the ALJ's reference to the lack of aggressive treatment, emergency room visits, or use of a cane all disregard the fact that none of these treatment modalities would be expected for someone whose underlying diagnosis is fibromyalgia. Overall, and for largely the same reasons this Court found the ALJ's decision in the *Madinger* case to be deficient, the Court concludes that there is merit in Plaintiff's claims of error, and that the ALJ's decision cannot stand.

### E. Decision to Reverse or Remand

As this Court has often observed,

> a remand under sentence four may result in the need for further proceedings or an immediate award of benefits. [citations omitted]. The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

*Smith v. Comm'r of Soc. Sec. Admin.*, 2021 WL 1165763, at *6 (S.D. Ohio Mar. 26, 2021). Plaintiff has asked for an immediate award of benefits, arguing that the record concerning relevant time period is complete and that Dr. Wilson's opinion strongly supports a finding of disability, since Plaintiff would be deemed disabled under the Medical-Vocational Guidelines if she were limited to sedentary work for that time period. The Court is concerned that the ALJ essentially repeated the same error which necessitated the previous remand. However, it is not the Court's job to weigh the evidence in the first instance, and the Commissioner should be given the chance to evaluate Dr. Wilson's opinion, along with other evidence, correctly, which has not yet occurred. Under these circumstances, a remand for further proceedings is the more appropriate remedy.

### V. CONCLUSION AND ORDER

For the reasons stated above, the Court **SUSTAINS** Plaintiff's statement of errors and **REMANDS** this case to the Commissioner pursuant to 42 U.S.C. §405(g), sentence four.

/s/ Terence P. Kemp
**Terence P. Kemp**
**United States Magistrate Judge**